# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PAMELA BRAUD, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-1898 c/w 05-1977, 05-5557 and 06-0891** |
| **TRANSPORT SERVICE CO. OF ILLINOIS, ET AL.** | **SECTION "A" (3) 28 U.S.C. § 636(c)** |

## ORDER

On June 16, 2010, the undersigned Magistrate Judge conducted a fairness hearing on the proposed settlement in this putative class action. Also before the Court are the Motion for an Award of Common Benefit Attorneys' Fees, Costs and Administrative Expenses; Approval of Incentive Awards to Settlement Class Representatives; and an Award of Common Benefit Fees and Costs for Plaintiffs' Settlement Class Counsel [Doc. #215] and the Intervening Plaintiffs' Counsel's Motion for Attorney's Fees/Petition for Common Benefit Fees [Doc. #216]. Present at the oral hearing were John Paul Massicot, Damien Savoie, David Scalia and Gregory Gremillion on behalf of plaintiffs and consolidated plaintiffs. Also present were J. Warren Gardner and Gregory Scott LaCour on behalf of defendant Transport Services Co. of Illinois and Magali Puente on behalf of defendant Jerome Holmes. Also present were Pius Obioha on behalf of the objectors and William Hall, the Court-appointed Special Master.[1] Having reviewed the relevant pleadings and memoranda, the case

---

[1] While other counsel was present, the Court lists only those directly involved in the federal-court suit.

law, the parties' oral argument and any objections to the settlement, the Court rules as follows.

## I.     Background

On August 30, 2004, Pamela Braud and certain other plaintiffs ("plaintiffs") filed a "Class Action Petition for Damages" in Civil District Court for the Parish of Orleans.   This lawsuit arose out of a chemical spill that occurred on August 19, 2004 in the Algiers area of New Orleans, Louisiana.   Plaintiffs proposed a class that would consist of all persons who were present and/or owned property in the affected vicinity of General Meyer Boulevard and Huntlee Drive in Algiers, Louisiana on August 19, 2004, "when a toxic, noxious and/or hazardous substance [Monoethanolamine] was released and/or leaked from the failed tanker" owned by defendant Transport Service Co. of Illinois ("Transport") and driven by its employee, Jerome Holmes. [Doc. #1 at p. 7].

On April 8, 2005, plaintiffs amended their petition to name as an additional defendant Ineos Americas, L.L.C. ("Ineos"), which plaintiffs contended was the owner and co-shipper of the chemical that allegedly spilled.   Ineos was served with the original and supplemental class action petition on April 19, 2005.   On May 19, 2005, Ineos timely removed the action to federal court, basing removal jurisdiction on the Class Action Fairness Act of 2005 ("CAFA").   Plaintiffs are citizens of Louisiana, and Ineos is a foreign corporation authorized to do business in Louisiana.   On June 17, 2005, plaintiffs moved to remand to state court, and on July 12, 2005, they filed a purported unopposed motion to dismiss Ineos.   By order entered December 9, 2005, the District Court remanded, finding that CAFA did not apply because plaintiffs had filed their initial complaint before CAFA's effective date, despite the fact that Ineos was not named as a defendant until after the

effective date (February 18, 2005). Transport, pursuant to 28 U.S.C. § 1453(c), filed on December 16, 2005 a timely application for leave to appeal, which the Fifth Circuit granted on January 27, 2006.

The issue on appeal (one of first impression) was whether an amendment of the complaint through the addition of a new defendant "commenced" a new suit for purposes of CAFA. Defendants urged the Fifth Circuit to employ the reasoning of *Knudsen v. Liberty Mutual Insurance Co.*, 411 F.3d 805, 807 (7th Cir. 2005), and *Schillinger v. Union Pacific Railroad*, 425 F.3d 330 (7th Cir. 2005), to hold that the post-CAFA amendment of a pre-CAFA complaint by adding a new defendant "commences" a new suit. Plaintiffs countered that (1) CAFA was not meant to be retroactive; (2) *Knudsen* was inapposite, and any language that would support appellants' position was "mere dicta;" (3) even applying *Knudsen*'s reasoning, no new suit would commence here, because the addition of Ineos "related back" to the original complaint; and (4) in any event, Ineos's dismissal after removal and before the ruling on the motion to remand ousted the court of subject matter jurisdiction.

The Fifth Circuit found in favor of Transport, reaching the conclusion that amendments that add a defendant "commence" the civil action as to the added party based on two considerations: (1) Because CAFA does not define "commencement" of an action, it is obvious that CAFA is not intended to replace caselaw deciding when a lawsuit is considered "commenced" as to a new defendant and "most courts examining post-CAFA pleading amendments in a suit pending pre-CAFA recognize that such amendments can commence a 'new' lawsuit and create federal removal jurisdiction;" and (2) the court agreed with the *Knudsen* court that the addition of a new

defendant "opens a new window of removal" under 1446(b). *Braud v. Transp. Serv. Co. of Ill.*, 445 F.3d 801 (5th Cir. 2006). The Fifth Circuit reversed the order of the district court and remanded the matter to the district court for further proceedings.

After remand, the parties consented to proceed before the undersigned. The case then proceeded to a bench trial on two major issues: (1) the third-party fault of the policemen and the fireman after arrival at the spill and (2) the liability of Transport (*i.e.*, whether Holmes was operating in the course and scope of his employment at the time of the accident). Plaintiffs prevailed on both issues. However, the Court later denied plaintiffs' motion for class certification.

The parties ultimately settled. On March 1, 2010, the Court entered a preliminary approval order that defined the settlement class, designated class counsel, preliminarily found the sum of $950,000.00 reasonable and adequate to compensate the class and scheduled the fairness hearing on June 16, 2010. The Court has now conducted the fairness hearing as to the terms of the class settlement and approves the settlement for the reasons that follow.

## II.    Law

Federal Rule of Civil Procedure 23 governs the settlement of class actions. *See Henderson v. Eaton*, No. Civ. A. 01-0138, 2002 WL 31415728, *2 (E.D. La. 2002) (citing *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176-77 (5th Cir. 1975)). A class action may not be dismissed or compromised without the district court's approval. *See* Fed. R. Civ. P. 23(e). Before a court approves a settlement, the court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(c); *see also Cope v. Duggins*, 203 F. Supp. 2d 650, 652-53 (E.D. La. 2002) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

The Court must "ensure that the settlement is in the interest of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (quoting *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978)). Because the parties' interests are aligned in favor of a settlement, the Court must take independent steps to ensure fairness in the absence of adversarial proceedings. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002) (noting that the class action context "requires district judges to exercise the highest degree of vigilance in scrutinizing proposed settlements."); *see also* Manual for Complex Litigation ("MCL") (Fourth) § 21.61 (2004). The Court's duty of vigilance does not, however, authorize it to try the case in the settlement hearings. *Cotton*, 559 F.2d at 1330.

A court shall not approve a settlement unless it is fair, adequate, and reasonable. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). In evaluating proposed settlements, a court should consider six factors:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Id.* (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978)). Absent a showing of fraud or collusion, "the most important factor is the probability of the plaintiffs' success on the merits." *Id.* The Court must therefore ensure that evidence from the class representatives and special master resolve the aforementioned factors. In considering these factors, there is a strong

presumption in favor of finding the settlement fair. *See Cotton*, 559 F.2d at 1331 ("Particularly in class action suits, there is an overriding public interest in favor of settlement.") (citing *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826 (5th Cir. 1975)).

## III. Analysis

### A. Fairness of the Settlement

At the oral fairness hearing, the Court heard testimony from numerous witnesses. The first witness to take the stand was class representative Ibrahim Autamari, who owns a business in the geographical area of the toxic spill. Autamari testified that he lost business on the day of the spill because the civil authorities cordoned off the area of the spill. Autamari testified that he had discussed the settlement with class counsel, had read the settlement documents, had read the petition for counsels' fees and costs, had discussed the settlement with the other class representatives and believed the settlement to be fair and adequate to compensate the class.

Annie Meredith and Vicki Duzac, two other class representatives, then testified.[2] Meredith is a resident of the affected area, and Duzac is an officer of the New Orleans Police Department who was one of the first responders to the scene. While their losses differed from Autamari's, both testified identically to Autamari concerning the settlement terms and agreement. During the testimony of Meredith, Pius Obioha, attorney for certain objectors, withdrew his objection after questioning Meredith as to the amount of the settlement agreement. The objection will be discussed further below.

---

[2]     The Reverend Samuel Meredith, the husband of Annie Meredith, was present in the courtroom. The parties stipulated that his testimony would be identical to that of his wife.

William Hall, the Court-appointed Special Master, then testified. Hall testified that he had received no properly-filed opt-outs from the class. He also testified that he had received timely-filed objections (withdrawn later, as noted above) but had not received proof of claims as to those objectors. Further testimony as to the reasonableness of the attorneys' fees will be discussed below.

The Court finds that the settlement amount of $950,000.00 is fair and adequate to compensate the class. Counsel notes that approximately 687 claim forms were submitted before the Court-ordered deadline. Of these, approximately 578 claims fall within the established geographic boundaries. Approximately 200 claim forms have been provided with proof of residency or presence in the boundary areas. The sum of $950,000.00 -- less the attorneys' fees, as will be discussed below -- is adequate to compensate this number of plaintiffs for their damages.

No party testified that the settlement was a product of fraud and/or collusion. Indeed, the Court notes that the parties have actively pursued settlement for a long period of time. Neither was the objection based on any notion of fraud and/or collusion. This lawsuit has been pending for five years, and the parties have actively pursued settlement as a final resolution. Indeed, while the Court ultimately denied class certification, plaintiffs earlier prevailed on the two aforementioned liability issues after a bench trial. Further, it is undisputed that a spill occurred, and plaintiffs have a likely success on the merits. The length of time that this suit has been pending, and the possibility that plaintiffs may succeed on the merits weigh in favor of plaintiffs' receipt of a large settlement fund that totals approximately one million dollars. The Court places heavy emphasis on the respective opinions of the class representatives, class counsel and the Special Master, all of whom testified that they approve of the settlement and its amount. The Court has no evidence before it that this

settlement is unfair or inadequate to compensate plaintiffs.

On May 19, 2010, counsel Pius Obioha filed an objection to the settlement in the record. The objection listed the names of the putative plaintiffs and the objection itself: "The class members believe the settlement amount is inadequate to fully compensate the entire class for damages sustained." [Doc. #213 at p. 9]. On June 30, 2010, Ron Austin filed a similar objection. [Doc. #225]. While Obioha withdrew his objection at the oral fairness hearing, it appears that he now renews the objection, given that he has filed a Memorandum in Support of Objection Filed on Behalf of Certain Plaintiffs' Class Members. [Doc. #223].

In the memorandum, counsel argues that the deadline to file a proof of claim form was May 7, 2010, and the deadline to file an objection was May 19, 2010. Counsel argues that nowhere on the settlement's website – www.aotclassaction.com – does it indicate that plaintiffs needed to file a proof of claim form to remain a member of the class and to later object. Counsel also notes that the "Legal Notice of Class-Wide Settlement" stated "those Class Members who do not timely file a proof of claim . . . are not entitled to participate in any settlement or judgment affecting the Class Plaintiffs." [Doc. #223-4 at p. 6]. Counsel argues, however, that the Legal Notice, like the website, did not require that a proof of claim form be filed to object to the settlement. Lastly, counsel notes that Section VII(5) of the settlement agreement provides, "Except for those settlement class members who have opted out in accordance with this agreement, every settlement class member will conclusively be deemed a settlement class member for all purposes under this agreement." [Doc. #223-5 at p. 13]. Counsel thus contends that the objecting putative class members are conclusively deemed class members under the settlement agreement itself because they never opted out of the

settlement.

For the following reasons, the Court rejects all objections to the settlement. The text of Federal Rule of Civil Procedure 23 allows a class member to object to a proposed settlement. Fed. R. Civ. P. 23(e)(5). But only class members have standing to object to a settlement. *Feder v. Elec. Data Sys. Corp.*, 248 Fed. Appx. 579, 580, 2007 WL 2800135, *1 (5th Cir. Sept. 25, 2007). "Anyone else lacks the requisite proof of injury necessary to establish the 'irreducible minimum' of standing." *Id.* The issue here is whether the putative plaintiffs listed in Obioha's objection and those in Austin's objection have provided enough evidence to demonstrate that they are class members who have standing to object. It is putative plaintiffs' burden to demonstrate that they have standing. *Id.* at *2 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

The period to file a proof of claim closed on May 7, 2010. There is no evidence in the record that putative plaintiffs filed timely proof of claim forms. Indeed, Obioha submitted proof of claims on behalf of the putative plaintiffs to the Court at the June 16, 2010 oral hearing, more than a month after the deadline. *Id.* It is axiomatic that one must file a proof of claim form to become a member of a class, especially in a suit such as this in which this Court denied class certification, and the only class is a class for settlement purposes. While Obioha argued at the oral hearing that he had timely mailed the proof of claim forms, the only evidence in the record of a mailing that this Court has seen is a certified letter envelope attached to putative plaintiffs' objections and dated May 19, 2010.[3]

Further, despite their unsupported assertions that they are members of the settlement class,

---

[3]     Austin did not file his objection until June 30, 2010, well after the May 19, 2010 deadline. Moreover, there is no evidence in the record that any of Austin's putative plaintiffs even filed untimely proof of claim forms.

there is no evidence in the record that putative plaintiffs reside in the geographical boundary of the class. While putative plaintiffs listed their addresses on the untimely-filed proof of claim forms, class counsel never had the opportunity to compare the forms to the geographical boundary in the settlement agreement to ensure that plaintiffs fall within the definition of the class. While counsel's argument that Section VII(5) of the settlement agreement "deems" them settlement class members is superficially appealing, counsel can not avoid the fact that a party must file a proof of claim form before one can become a member of a settlement class. The language in the settlement agreement cited by the objectors presupposes that the settlement class member has filed a proof of claim form and has already become a settlement class member. Indeed, one can not opt out of a class to which one is not already a member. The Court here did not certify a class, and thus the only way that a party could become a member of the class would have been to file a proof of claim in accordance with the directive of the legal notice and the settlement agreement. Putative plaintiffs simply have no standing to object. Accordingly, the Court rejects the objections and finds the settlement fair and adequate to compensate the settlement class members.

**B.     Attorneys' Fees**

**1.     Motion for an Award of Common Benefit Attorneys' Fees, Costs and Administrative Expenses; Approval of Incentive Awards to Settlement Class Representatives; and an Award of Common Benefit Fees and Costs for Plaintiffs' Settlement Class Counsel**

Class counsel, Silvestri & Massicot, seeks an award of common-benefit attorneys' fees based on a "percentage of the fund" method rather than the Lodestar method because a calculation of a fee award based on the lodestar method will exceed the 40 percent sought under the percentage method.

Counsel also seeks the allocation of an incentive award to the class representatives.

After citing relevant and generic case law as to the calculation of attorneys' fees under the lodestar method, counsel argues that there is a trend in the courts to adopt the "percentage of the fund" calculation in common-fund suits. *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997); *see Longden v. Sunderman*, 979 F.2d 1095 (5th Cir. 1992); *In re Harrah's Entm't, Inc. Secs. Litig.*, No. Civ. A. 95-3925, 1998 WL 832574 (E.D. La. 1998).

Counsel argues that customarily, the percentage fees range between 33.33% and 45%. Counsel suggest that 40% is a reasonable rate in this suit given the nature of the litigation, the inherent risks involved, the amount of work done, the results obtained and the twelve factors in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). Counsel points to unpublished case law in this circuit in which the court has awarded a 40% fee. *Pedeaux v. Georgia Gulf Corp.*, Civ. A. No. 01-349 (M.D. La.), [Doc. #97 at p. 4]; *In re Eunice Train Derailment*, Civ. A. No. 00-1267 (W.D. La.), [Doc. #124 at p. 7]; *In re The Complaint of Ingram Barge Co.*, Civ. A. No. 97-226 (M.D. La.), [Doc. #4060 at p. 5].

Counsel argues that the time, labor, novelty and skill involved in this suit support a fee award of 40%. Counsel reviewed plaintiffs' rights before filing suit, investigated the claim, filed the suit, engaged in discovery, including propounding written discovery and attending numerous depositions, and defended the earlier two liability issues at trial before this Court. Counsel appealed the remand order to the Fifth Circuit. In addition, counsel has successfully resolved this suit. Counsel notes that in their five-year involvement in this suit, they have expended approximately 1,380 hours of attorney

time and 185 hours of paralegal time.

Counsel argues that while this suit did not preclude them from accepting other work, it did preclude counsel's firm from devoting more time to other suits. Counsel contends that their relationship with the class representatives has been a professional one. Counsel also notes that the possibility of non-payment and the loss of costs expended on behalf of the putative class members have been present throughout the litigation. Counsel advanced significant costs in this suit. That counsel negotiated a $950,000.00 settlement also weighs in favor of the fee award, given that the chemical spill was actually a rather small, albeit dangerous, spill. Counsel also contends that their experience, reputation and ability support the fee award. Counsel maintains that because many attorneys did not view this suit as one with a large potential or easy return, the undesirability of the case also weighs in favor of a fee award.

Counsel also contends that Ibrahim Autamari, Vicki Duzac, Annie Meredith and the Rev. Samuel Meredith merit incentive awards of $7,000.00, $5,000.00, $2,500.00 and $2,500.00, respectively. The class representatives worked with experienced counsel to help prosecute the suit. The class representatives also helped confer a benefit on the entire class. Citing to case law from other courts, counsel argues that such incentive awards are common and consistent with other incentive awards.

Lastly, counsel asks the Court to reimburse the Court-appointed Special Master, the Disbursing Agent and the Escrow Agent on submission of their respective bills, which sums shall be paid from the aggregate settlement fund.

**2.      Intervening Plaintiffs' Counsel's Motion for Attorney's Fees/Petition for**

**Common Benefit Fees**

Gregory Gremillion moves for an award of common-benefit attorneys' fees. He argues that he seeks the fees expended only for the common benefit of the class, although he actually expended more time on the suit. Gremillion represents Vicki Sessler Duzac, a class representative, and Shinette Kelly, Gary Gremillion, John Duzac and Robert Italiano.

Gremillion originally filed suit on behalf of his clients in state court. Gremillion notes that he participated in numerous depositions in the suit, including those of all five of his clients. Gremillion seeks a fee award in the total amount of $4,425.00. This amount includes common-benefit time on his behalf of 20.1 hours at $200.00/hour. Gremillion also notes that his paralegal devoted 5.4 hours to the suit at a rate of $75.00/hour, for a total of $405.00.

### 3. The Fairness Hearing

As noted above, at the fairness hearing, each class representative testified that he or she had read the petition for fees and costs, had discussed the petition with the other class representatives and approved the petition. Irving Warshauer, Esq. then testified as an expert as to attorneys' fees in suits such as this one. Warshauer testified that he has been an attorney in Louisiana since 1976 and has been involved in numerous class-action suits. After class counsel tendered him as an expert as to attorneys' fees in class-action suits, the Court accepted him as an expert after no objection.

Warshauer stated that he had reviewed the petition for fees and costs and examined the entire and voluminous file of this suit at the office of Sylvestri & Massicot. He testified that the contents of the file corresponded to the work listed as performed in the petition. Warshauer's expert opinion is that a fee of 40 percent is fair and adequate given the amount of work performed in this suit. He

then cited the Court to several cases – both state and federal – in which the courts had awarded a fee of 40 percent. Warshauer testified that the work that Sylvestri & Massicot performed was commensurate with work that he and other attorneys had performed in similar suits.

After discussing Gremillion's fee petition, no party objected to the petition. Finally, Laura Bass, a paralegal at Sylvestri & Massicot, testified. She has been a paralegal at Sylvestri & Massicot for eight years. She testified as to the work that the firm had performed. She also testified that she had handled the claims office at Sylvestri & Massicot and that she had helped to design the class-action settlement website.

### 4.    Analysis

With regard to determining the reasonableness of the amount of attorneys fees, a "'district court is not bound by the agreement of the parties.'" *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998) (quoting *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980); *Foster v. Boise-Cascade, Inc.*, 577 F.2d 335, 336 (5th Cir. 1978)). "The court must scrutinize the agreed-to fees under the standards set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974), and not merely 'ratify a pre-arranged compact.'" *Strong*, 137 F.3d at 849 (quoting *Piambino*, 610 F.2d at 1328). "Even when the district court finds the settlement agreement to be untainted by collusion, fraud, and other irregularities, the court must thoroughly review the attorneys' fees agreed to by the parties in the proposed settlement agreement." *Id.* at 850.

### a.    Calculating Fees in the Fifth Circuit

Typically, courts have applied two different methods for calculating attorney fees in class action lawsuits: the percentage fee method and the lodestar method. In the Fifth Circuit, the lodestar

method is used to calculate reasonable attorneys fees, but that method has been somewhat "blended" with the percentage fee method and the twelve factors set forth in *Johnson*. *See In re Harrah's Entm't Inc. Secs. Litig.*, No. Civ. A. 95-3925, 1998 WL 832574, at *3 (E.D. La. Nov. 25, 1998) (citing *In re Combustion, Inc.*, 968 F. Supp. 1116, 1135 (W.D. La. 1997)).  Moreover, numerous district courts in this circuit have simply applied the percentage fee method in common fund cases. *See Harrah's*, 1998 WL 832574, at *2 (citing *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 500 (N.D. Miss. 1996);  *In re Prudential-Bach Energy Income P'ships Secs. Litig.*, No. MDL 888, 1994 WL 150742, at *4 (E.D. La. Mar. 7, 1994)); *see also Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676 (E.D. La. 2006) (applying percentage fee method to compute common benefit fees in class action); *Faircloth v. Certified Fin., Inc.*, No. Civ. A. 99-3097, 2001 WL 527489 (E.D. La. May 16, 2001) (same).

The Fifth Circuit has held that "this circuit uses [the lodestar method] to assess attorneys' fees in class action suits."  *Strong*, 137 F.3d at 850. As Judge Clement stated in *Harrah's*, however, "[d]espite the apparent advantages of the percentage fee method over the lodestar method in common fund cases, the law in the Fifth Circuit concerning which method should be applied is 'at best unclear.'"  *Id.* (quoting *Combustion*, 968 F. Supp. at 1134).  But while the lodestar method is still the proper method for calculating attorneys' fees in this jurisdiction, the Fifth Circuit has recognized the propriety of the percentage fee method in situations in which each member of a class has an "undisputed and mathematically ascertainable claim to part of [a] judgment."  *Strong*, 137 F.3d at 852 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980)).  Therefore, "[i]t seems that a district court in the Fifth Circuit may exercise discretion in determining whether to apply the

percentage fee or lodestar method, as long as under either method the award is supported by the twelve *Johnson* factors. *Harrah's*, 1998 WL 832574, at *3 (citing *Combustion*, 968 F. Supp. at 1135). Under either the lodestar or percentage fee method, the Fifth Circuit requires that the award be supported by the *Johnson* factors. *Combustion*, 968 F. Supp. at 1135.

In 1974, the Fifth Circuit articulated twelve factors to be examined in setting attorneys' fees. *Johnson*. 488 F.2d at 717. The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of professional relationship with the client; and (12) awards in similar cases. *Id.* at 717-19.

Here, the Court will apply the percentage fee method in accordance with the case law in this circuit and at the request of counsel. The Court does not find that application of the lodestar method would result in a more reasonable award of fees. Moreover, application of the lodestar method would be unduly burdensome. The lodestar method would require the Court to set reasonable rates for the attorneys of at least four different firms and to review extensive itemized billing records in order to determine whether the approximately 1,600 charged hours were reasonably expended.

**b.    Benchmark Percentage**

Many courts begin their fee analysis by determining the initial "benchmark" percentage, which they then adjust for the particular circumstances of the case. *See, e.g., Camden I Condominium Ass'n, Inc. v. Dunkel*, 946 F.2d 768, 774-75 (11th Cir. 1991) (citing *Paul, Johnson,*

*Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989)); *In re Catfish Antitrust Litig.*, 939 F.Supp. at 501; *see also* Manual of Complex Litigation ("MCL") (4th) § 14.122. To determine the benchmark, the Court considers fee awards in similar cases, which the Court notes is the last of the *Johnson* factors. The Manual for Complex Litigation states that a fee of 25% of a common fund "represents a typical benchmark." MCL (4th) § 14.121. Further, data on fee awards in class action settlements is available in a recent study that compares two comprehensive class action data sets from 1993-2002. *See* Theodore Eisenberg and Geoffrey P. Miller, *Attorney Fees in Class Action Settlement: An Empirical Study*, 1 Journal of Empirical Legal Studies 27, 28 (2004). The data sets are (1) data based on published decisions from "all state and federal class actions with reported fee decisions between 1993 and 2002, inclusive, in which the fee and class recovery could be determined with reasonable confidence"; and (2) information reported on more than 600 common fund cases from 1993 to 2002 in Class Action Reports ("CARs"). *Id.* The study finds a "strong correlation between the fee amount and the client recovery." *Id.* at 52. The study further indicates that a scaling effect exists, for "[a]s client recovery increases, the fee percent decreases." *Id.* at 54. The authors of the study suggest that the results can assist courts in determining fee awards:

> [B]ecause our study finds an overwhelming correlation between class recovery and attorney fees, the court can conduct a simple initial inquiry that looks only at these two variables in any case where the size of the class recovery can be estimated. The court need only compare the request in a given case with average awards in cases of similar magnitude. If the request is relatively close to average awards in cases with similar characteristics, the court may feel a degree of confidence in approving the award. If the request is significantly higher than amounts awarded in past cases, the court should inquire further.

*Id.* at 72. Eisenberg and Miller divided the cases into ten ranges of recovery (deciles) and then gave

the mean and median fee percent, as well as the standard deviation for each fee percent. *Id.* at 73. The Court finds the study's data on the average percentage fee awarded in the recovery range comparable to this case useful in arriving at a benchmark percentage fee. *Id.*

The $950,000.00 recovery in this case falls within the less than 10% decile of client recovery, which includes recoveries of less than $1.4 million. *Id.* at 73. Based on the CARs data set, the mean fee percent for nonsecurities cases in this decile was 30.9%, with a standard deviation of 8.2%. *Id.* The data set generated from published decisions shows a mean fee percent for cases in this decile of 29.5%, with a standard deviation of 5.9%. *Id.*

Based on this data, the Court will use an initial benchmark of 30%, which is roughly the average of the mean fee percentages of the two data sets for settlements of this size. The 30% benchmark is only 5% over and above the "typical benchmark" cited by the Manual for Complex Litigation (Fourth) § 14.121. The Court also notes that this percentage is in line with the percentage fee awards in the majority of the opinions from this circuit that this Court has reviewed. *See, e.g., In re OCA, Inc. Secs. & Derivative Litig.*, Civ. A. No. 05-2165, 2009 WL 512081, *20 (E.D. La. Mar. 2, 2009) (awarding a percentage fee award of 27% in securities case after reviewing Eisenberg and Miller); *In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, *20 (W.D. La. Oct. 31, 2006) (awarding percentage fee award of 27% toxic exposure suit after reviewing Eisenberg and Miller); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 612630 (2006) (awarding percentage fee award of 25% in contract suit after reviewing Eisenberg and Miller); *Faircloth v. Certified Fin., Inc.*, No. Civ. A. 99-3097, 2001 WL 527489, *9 (E.D. La. May 16, 2001) (awarding a percentage fee award of 35% in unlawful debt

suit); *Harrah's*, 1998 WL 832574, *4 (awarding percentage fee award of 25% in securities fraud suit). The Court will next determine whether the benchmark should be adjusted based on the particular circumstances of this case. In doing so, the Court will consider the other eleven *Johnson* factors.

### c.      The *Johnson* Factors

#### i.      The Time and Labor Required

The Court finds that the amount of time and labor required in this suit warrants an adjustment of the benchmark percentage. This case has been pending for almost five years, and the parties have devoted much time and effort to its resolution. The parties participated in intensive and voluminous discovery and many depositions, as well as motion practice, class certification and a bench trial on two underlying issues. The parties even pursued the remand under CAFA on appeal to the Fifth Circuit. Accordingly, the Court finds that consideration of this factor warrants an increase in the benchmark percentage.

#### ii.      The Novelty and Difficulty of the Question

This case involved factually and legally complex issues. The issue raised on appeal under CAFA was one of first impression in this circuit. While the Court notes that factually, the case appears not so difficult – indeed, that a spill occurred has never been in dispute – the Court notes that some of the underlying issues have been difficult. At the bench trial, the parties briefed and submitted evidence on the vicarious liability of  Transport and Transport's affirmative defense of third-party fault (*i.e.*, that the first responders over-reacted after arriving at the spill and calling for a 1/2-mile evacuation).  Accordingly, the Court finds that consideration of this factor warrants an

increase in the benchmark percentage.

### iii.    The Skill Requisite to Perform the Legal Service

This factor is closely tied to the second factor.  Whether counsel needed more skill than usual to perform the legal services necessarily turns on the novelty and difficulty of the issues that the suit presents.  Accordingly, the Court finds that the consideration of this factor warrants an increase in the benchmark percentage.

### iv.    The Preclusion of Other Employment

Counsel argues that this factor weighs in favor of an increase in the benchmark percentage. Counsel contends that while they did not turn away other cases, the work on this case prevented them from devoting more time to other cases and had a substantial impact on case turnover and firm income.  Given the amount of work expended on this suit over the approximately five-year period, the Court finds that this factor also weighs in favor of an increase in the benchmark percentage.

### v.    The Customary Fee

Counsel contends that the customary contingency fee awarded in lawsuits similar to the instant case is well known to range between 33.33% and 45%.  Counsel notes that at times this award is even higher, should a case be appealed.  Plaintiffs point to three cases – two out of the Middle District of Louisiana and one out of the Western District of Louisiana – in which the courts awarded a 40% fee award.  *Pedeaux v. Georgia Gulf Corp.*, Civ. A. No. 01-349 (M.D. La.), [Doc. #97 at p. 4]; *In re Eunice Train Derailment*, Civ. A. No. 00-1267 (W.D. La.), [Doc. #124 at p. 7]; *In re The Complaint of Ingram Barge Co.*, Civ. A. No. 97-226 (M.D. La.), [Doc. #4060] at p. 5].

But plaintiffs point to no facts to suggest that these cases are either representative or

comparable to this one. Nonetheless, "contested personal injury claims arising from chemical spills can be more time intense and complex than straightforward contract claims." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 512, 631 (E.D. La. 2006). Indeed, the parties here hotly contested liability and even went to trial on the issue of third-party and employer liability. Discovery involved medical and scientific proof of liability, causation and damages. Accordingly, while the Court is reticent to rely on three lawsuits that contradict the Eisenberg and Miller report, the Court finds that this factor also warrants an increase in the benchmark percentage.

### vi. Whether the Fee is Fixed or Contingent

Consideration of this factor is designed to "demonstrat[e] the attorney's fee expectations when he accepted the case." *Johnson*, 488 F.2d at 718. The fee here was contingent on the success of the litigation. Counsel contends that the possibility of non-payment and the loss of costs advanced on behalf of the putative class have been present throughout this litigation. Notwithstanding, the Court finds that such risk exists in all litigation. Whether the fee was fixed or contingent bears on whether counsel is bound by a contract and perhaps limited to a certain percentage even before the Court's analysis. The Court finds that this factor weighs neither in favor nor against an increase or decrease in the benchmark percentage.

### vii. Time Limitations Imposed by the Client

Under this factor, the Court is to give a premium for "priority work that delays the lawyer's other legal work." *Id.* As noted above, counsel contends that while they did not turn away other cases, the work on this case prevented them from devoting more time to other cases and had a

substantial impact on case turnover and firm income. Accordingly, given the amount of work expended on this suit over the approximately five-year period, the Court finds that this factor also weighs in favor of an increase in the benchmark percentage.

### viii. The Amount Involved and the Results Obtained

Counsel contends that the negotiation of the $950,000.00 settlement for a relatively limited chemical spill with a limited exposure area weighs in favor of an increase in the benchmark percentage. Counsel also argues that their resolution of this suit as a class – as opposed to many individual trials after the denial of class certification – warrants an increase. The Court finds that counsel has obtained a substantial settlement and also devised a plan for distribution of the fund and payment of claims that is practical, streamlined and fair. This factor warrants an increase.

### ix. The Experience, Reputation and Ability of the Attorneys

The Court is satisfied that the experience and reputation of the attorneys involved are of the highest order. In addition, the Court notes that the ability of class counsel, as evidenced by their performance in this case, is equally first-rate. However, the Court finds that the quality of counsel is already accounted for in the enhancement the Court grants for the quality of the result and that this factor warrants no further enhancement.

### x. The "Undesirability" of the Case

Class counsel asserts that this case was extremely undesirable, mostly based on the risk of non-recovery, the difficulties in following up with plaintiffs after Hurricane Katrina and the potential that hundreds of individual trials would become necessary. Counsel argues that many attorneys did not view the case as one of large potential or easy return. The Court finds that although this is not

the type of unpopular case that might stigmatize the lawyer who takes it, *see id.* at 719, there are

some aspects of this case that made it undesirable.  The risk of non-recovery of damages was, of

course, significant, and the Court notes that following up with the affected class members had to be

difficult given that much of the geographical boundary at issue here flooded significantly after

Hurricane Katrina.  Further, the relatively small size of the individual claims made undertaking

expensive litigation against a few well-financed corporate defendants on a contingent fee a

not-very-attractive proposition.  Class certification would have changed this dynamic, but, here, a

class was not certified.  Accordingly, the Court finds that the undesirability in this case warrants an

increase in the fee award.

### xi.     The Nature and Length of the Professional Relationship

Counsel notes that their professional relationship with the class representatives has

developed into a good one, built on mutual respect and the exchange of information and advice.

Counsel contends that they have conferred a benefit on many of the settlement class members who

would not have received one as their claims would not have merited the time and expense to pursue

as individual cases.  After hearing the testimony of the class representatives, the Court finds that the

relationship between them and class counsel is a professional one in which all class representatives

were educated about the case and the settlement.  Accordingly, this factor warrants an increase in

the benchmark percentage.

Accordingly, after an application of the *Johnson* factors, the Court finds that an increase to

a 37% benchmark percentage is appropriate under the facts and circumstances of this particular case.

A sum of $351,500.00 of the $950,000 settlement agreement shall be set aside for the payment of

class and all counsel.

In a supplemental memorandum, counsel asks that a fund in the amount of no more than $50,000.00 be set aside from the requested total fee award for the payment of the individual attorneys' fees for those attorneys with contingency contracts for settlement class members who receive an award. Class counsel asks that the individual attorneys be paid on a pro rata basis by the Special Master, subject to Court approval. The Court finds no adequate basis to grant this request at this time. The Court is reticent to grant such a request with absolutely no knowledge of what any of the individual attorneys may claim. Any disputes that may arise may be resolved by the Special Master, subject to final approval by the Court.

### d. Incentive Awards

As noted above, counsel contends that Ibrahim Autamari, Vicki Duzac, Annie Meredith and the Reverend Samuel Meredith merit incentive awards of $7,000.00, $5,000.00, $2,500.00 and $2,500.00, respectively. Federal courts often approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and the burdens they shoulder during litigation. *See In re Catfish Antitrust Litig.*, 939 F. Supp. at 503-04. Here, these four class representatives were involved in initiating the litigation and were willing to be subjected to discovery and to submit to depositions on behalf of the class. The Court finds that there is an adequate basis to award the incentive payments to each of the Class Representatives. *See generally* National Association of Consumer Advocates, *Standards and Guidelines for Litigating and Settling Consumer Class Actions*, 176 F.R.D. 375, 387 (West 1998).

### e. Administrative Costs

24

Counsel also ask the Court to award reimbursement of administrative costs to the Court-appointed Special Master, Disbursing Agent and Escrow Agent after submission of their respective bills. The Court will consider these costs after submission of the bills to the Court.

In a supplemental memorandum, counsel asks the Court to award $1,650.00 to Irving Warshauer for his work as an expert with regard to the attorneys' fees. The sum of $1,650.00 represents 5.5 hours of work at $300.00/hour. Warshauer is an attorney with 34 years of experience and has litigated many class-action lawsuits. For such experience, the Court finds the rate of $300.00/hour to be reasonable. The Court is familiar with the local legal market and finds that the $300.00/hour rate is within the customary range for partner-level attorneys practicing law in the area. The Court has recently approved attorneys' fees above these requested rates in a securities class action. *See In re OCA, Inc., Secs. & Derivative Litig.*, Civ. A. No. 05-2165, 2009 WL 512081, at *25 (E.D. La. 2009) (finding that partner-level attorneys performing securities work customarily billed at a rate between $400 and $450 an hour and associates customarily billed at a rate between $200 and $250 an hour). An attorney employed as an expert on attorneys' fees may charge a similar rate.

The Court also finds Warshauer's hours to be reasonable. Warshauer reviewed the settlement documents and the pleadings, class counsel's entire file at the office of Sylvestri & Massicot, prepared for his testimony at the fairness hearing and testified at the fairness hearing. The Court finds that 5.5 hours to complete such work is reasonable. Accordingly, the Court will award Warshauer $1,650.00 in expert fees.

      **f.**      **Gremillion's Fee Petition**

As noted above, Gremillion seeks a fee award in the total amount of $4,425.00. This amount includes common-benefit time on his behalf of 20.1 hours at $200.00/hour. Gremillion also notes that his paralegal devoted 5.4 hours to the suit at a rate of $75.00/hour, for a total of $405.00. Gremillion represents five plaintiffs in this suit, including one of the class representatives.

The Court will employ the lodestar method to determine the amount of fees to which Gremiilion is entitled out of the common fund. In assessing the reasonableness of attorneys' fees, the court must first determine the "lodestar" by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney. *See Henley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Green v. Adm'rs of the Tulane Educ. Fund,* 284 F.3d 642, 661 (5th Cir. 2002); *Migis v. Pearle Vision, Inc.*, 135 F.2d 1041, 1047 (5th Cir. 1998); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The fee applicant bears the burden of proof on this issue. *See Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996); *Kellstrom*, 50 F.3d at 324; *In re Smith*, 996 F.2d 973, 978 (5th Cir. 1992).

Gremillion seeks an hourly rate of $200.00 for himself and $75.00 for his paralegal. Gremillion has approximately 30 years of experience. This Court has recently sanctioned similar hourly rates for attorneys with similar (or even fewer) years of experience. *See, e.g., Creecy v. Metro. Prop. & Cas. Ins., Co.*, 548 F. Supp. 2d 279, 285 (E.D. La. 2008) (Roby, M.J.) (sanctioning $175/hour for associate with five years experience and $200/hour for partner with 11 years experience); *Orrill v. Mortgage Elec. Registration Sys., Inc.*, Civ. A. No. 06-10012, 2009 WL 4861994, at *3 (E.D. La. Nov. 7, 2008) (Roby, M.J.) (sanctioning $150/hour for associate with four years experience and $200/hour for partner with 12 years experience).

The Court also finds that an hourly rate of $75.00 for a paralegal in this area is reasonable. *See, e.g., Thompson v. Connick*, No. 07-30443, 2008 WL 5265197, at *26-27 (5th Cir. Dec.19, 2008) (approving hourly rates of $67 to $112 for paralegals as "at the upper range of what was reasonable in the" Eastern District of Louisiana from 2003 to 2007); *Collins v. Sanderson Farms*, 568 F. Supp. 2d 714, 728 (E.D. La. 2008) (awarding $95/hour for paralegals); *Wells v. Regency Hosp. Co.*, No. 07-3775, 2008 WL 5273712, at *3 (E.D. La. Dec.15, 2008) (Roby, M.J.) (reviewing cases and finding that $115 per hour for paralegal work was excessive and awarding $64 per hour); *Combe v. Life Ins. Co.*, No. 06-8909, 2008 WL 544547, at *3 (E.D. La. Feb.27, 2008) (Livaudais, J.) (awarding $70 per hour for paralegal work).

Considering the prevailing market rates in the Greater New Orleans area, the Court finds that the aforesaid hourly rates are within the low end of the range of the market rate in this area and that said rates are reasonable.

The Court must next determine whether the number of hours that counsel expended on the litigation was reasonable. The burden of proving the reasonableness of the hours expended is on the fee applicant. *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 528 (5th Cir. 2001). As a general proposition, all time that is excessive, duplicative, and/or unproductive should be excised from any award of attorney's fees. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking fee awards. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). The fee seeker's attorneys "are charged with proving that they exercised billing judgment." *Id.* at 770. When billing judgment is lacking, the court *must* exclude from the lodestar

calculation the hours that were not reasonably expended.

This Court has reviewed line by line the billing statement submitted on behalf of Gremillion and finds the hours expended by counsel to be reasonable. The billing statement reflects that counsel prepared a petition for damages, attended no fewer than six depositions and participated in numerous telephone conferences during which the parties negotiated the settlement. Gremillion's paralegal prepared the proof of claim forms for his five clients and met with Gremillion and each individual client to discuss the proof of claim form. The Court's review of the billing statement satisfies it that defense counsel exercised billing judgment Accordingly, the Court finds that Gremillion is entitled to an attorney fee award of $4,425.00.

Generally, the Court must next consider whether the lodestar should be adjusted upward or downward, depending on the circumstances of the case and the factors set forth in *Johnson*. *See Green*, 284 F.3d at 661; *Cobb v. Miller*, 818 F.2d 1227, 1232 (5th Cir.1987). However, neither Gremillion nor any other party moves for an upward or downward adjustment here. The Court thus dispenses with any analysis under *Johnson*.

## IV.     Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the SETTLEMENT is APPROVED. This case is ADMINISTRATIVELY CLOSED, subject to the final approval of any petitions for fees of any individuals that may later be submitted in accordance with this Order.

**IT IS FURTHER ORDERED** that the Motion for an Award of Common Benefit Attorneys' Fees, Costs and Administrative Expenses; Approval of Incentive Awards to Settlement Class

Representatives; and an Award of Common Benefit Fees and Costs for Plaintiffs' Settlement Class Counsel [Doc. #215] is GRANTED IN PART as outlined above.

**IT IS FURTHER ORDERED** that Intervening Plaintiffs' Counsel's Motion for Attorney's Fees/Petition for Common Benefit Fees [Doc. #216 is GRANTED.

New Orleans, Louisiana, this <u>17th</u> day of August, 2010.

DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE